C. Ludwig Baumann & Company, Brooklyn v. Commissioner.
C. Ludwig Baumann & Co. v. Commissioner
Docket No. 110283.
United States Tax Court
1943 Tax Ct. Memo LEXIS 280; 2 T.C.M. (CCH) 188; T.C.M. (RIA) 43253; May 28, 1943
*280 Liability in fixed amount assumed by lessee for cancellation of a lease held deductible in year incurred, lessee being on the accrual basis; held, further, lessee realized no gain upon subsequent discharge of a portion of said liability for less than face value. United States v. Kirby Lumber Co., 284 U.S. 1, distinguished. Jonas J. Shapiro, Esq., 285 Madison Ave., New York City, for the petitioner. Scott A. Dahlquist, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent has determined a deficiency in income tax for the calendar year 1939 in the sum of $2,677.32. Two issues are raised: (1) The deductibility of notes in the amount of $3,576.96 paid within the taxable year, which notes were assumed by petitioner in connection with the cancellation of a lease entered into by it, and (2) whether gain was realized by the liquidation of a note on which petitioner was the obligor for onehalf of its face value. Findings of Fact Petitioner is a New York corporation engaged in the retail furniture business and has its principal place of business in Brooklyn. C. Ludwig Baumann has been president of petitioner since *281 its organization in 1910. He and his son are petitioner's sole stockholders. The return was filed with the Collector of Internal Revenue for the first district of New York. In 1923 petitioner needed additional warehouse space. It thereupon arranged for the purchase of a warehouse at 774 Fulton Street, Brooklyn. The contract of purchase was entered into in the name of an employee of petitioner, and a corporation known as Baumann Warehouses, Inc. was organized to take title to the property. The contract of purchase was assigned to Baumann Warehouses, Inc. and, on November 8, 1923, the deal was consummated and title to the property was taken by the new corporation. Funds to purchase the property were borrowed by Baumann Warehouses, Inc. from various friends and relatives of C. Ludwig Baumann, who received for their advances notes payable serially over a period of 20 years. Shares of stock in the warehouse company, proportionate to the amount of the loans, also were issued to those financing the transaction. On January 2, 1925, a lease was entered into between petitioner, as lessee, and Baumann Warehouses, Inc., as lessor. The lease was to be effective as of June 1, 1924, and was to *282 run to May 1944, at a yearly rental of $15,000. This rental was sufficient to permit the lessor to pay off the notes as they fell due and to provide sufficient funds for the lessor to pay the real estate taxes, interest on the mortgages, insurance, etc. The warehouse proved too small for its purpose and, in 1929, petitioner vacated the premises. The warehouse remained vacant from that time until 1932, although petitioner continued to pay rent thereon. In 1930, the rental was reduced from $15,000 to $12,000 per year. In the spring of 1932, the burden of paying the rent on the unoccupied building became too great for petitioner to continue. Negotiations were entered into between the parties to the lease looking to its cancellation. An agreement to cancel the lease was reached on May 19, 1932, under the terms of which petitioner assumed the payment of certain outstanding notes of Baumann Warehouses, Inc. in the amount of $45,100, which notes were retirable in the amount of $4,100 per year and carried interest of five per cent on the unpaid balance. The books of the petitioner are kept on the accrual basis. In 1932, at the time the lease arrangement was modified, there was set up on *283 the books a debit in an account for cancellation of leaseholds, and a credit in a deferred liability account. Beginning with 1932, the petitioner each year accrued $4,100 as an operating expense, and debited these amounts in the deferred liability account. This figure represents an amortization payment of 1/11th of the principal sum of $45,100 which was, by the terms of the notes, required to be amortized over the remaining period of years ending in 1943. These entries were similar to those which had previously been made for the rent charges, and the entry for 1939 was deducted as a rent charge in 1939 income tax return. During the taxable year 1932 petitioner had no net income and if it had accrued on its books the liability of $45,100 incident to the cancellation of the lease, it would have received no tax benefit by taking the deduction. In 1939, it discharged its liability on one of the outstanding notes in the face amount of $4,500 by paying to the holder thereof the sum of $2,250. This settlement was made with the estate of one Susie Hartman, one of the original note holders. As a result of this transaction petitioner made certain adjustments so that in the taxable year it *284 deducted the sum of $3,576.96 rather than the usual amount of $4,100. Opinion ARUNDELL, Judge: The first issue has to do with the proper treatment of the assumed liability of $45,100 incident to the cancellation of the lease on the warehouse in 1932. The respondent has determined that the full sum was properly accruable in 1932 as it was at that time that petitioner became liable for this indebtedness. Petitioner, on the other hand, seeks to spread the liability pro rata over the 11 years in which it has to liquidate the several notes. The sum of $3,576.96 sought to be deducted in the taxable year represents 1/11th of the total liability assumed in 1932 after making certain adjustments more fully set forth in our findings. Respondent's determination appears correct. We have consistently held that the consideration paid for the termination or concellation of a lease by the lessee is deductible in full by him as an ordinary and necessary expense for the year in which the expense is paid or incurred. ; , appealed C.C.A. 3, October 8, 1942. * Petitioner *285 was on the accrual basis and as the liability became absolute in 1932, even though the payments were to be made on future dates, good accounting required the accrual to be made at that time. Respondent did not err in denying the deduction in 1939 of a pro rata amount of the assumed indebtedness. The second issue raises the question whether a gain was realized on the liquidation of one of the notes in the face amount of $4,500 for $2,250. This transaction did not increase the assets of petitioner, but merely served to reduce its liabilities. The expenses incident to the cancellation of the lease turned out to be just that much less. This is not a case like , where the taxpayer profited by the difference between what it had borrowed and the sum it paid out to liquidate the indebtedness. There is no actual enrichment or the freeing of assets under the facts in this case. No asset was received when the indebtedness was assumed; the mere reduction of a liability under such circumstances does not constitute realized gain. ; *286 . Cf. . Moreover, no tax benefit resulted to petitioner as a result of this transaction. It did not in fact charge off in 1932 the full amount of its liability growing out of the cancellation of the lease, but if it had made such an entry on its accounts and in its tax return, no tax benefit would have resulted as petitioner had no taxable income in 1932. ; . On this issue petitioner is sustained. Decision will be entered under Rule 50. Footnotes
*. BTA decision affirmed by CCA-3, ,.↩